(Not for publication)                                        (Docket Nos. 77, 78)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| LEONARD BUTLER, SHIRLEY BUTLER, H/W, | : | |
| | : | |
| Plaintiff(s), | : | Civil No. 99-4367 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| POLICE OFFICER JEFF FRETT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff's Motion for Attorney's Fees and

Defendant's "Motion to Bar Plaintiff from Receiving Attorney's Fees." For the reasons that

follow, Defendant's motion will be denied and Plaintiff's motion will be granted in part and

denied in part.

## I. BACKGROUND

The underlying cause of action in the above-captioned case arises out of the events

occurring during the course of the Plaintiff's arrest on September 16, 1997. At approximately

1:00 a.m. on September 16, 1997, Plaintiff Leonard Butler ("Butler") lead Camden City police on

a 5-10 minute high speed car chase. The chase ended in Pennsauken, New Jersey when Butler

stopped his car in the parking lot of the Liquor Ranch store. Butler claimed that after he put his

hands up, Defendant Officer Frett pulled him from his car and forced him to the ground.

According to Butler, Officer Frett and other unknown officers then proceeded to beat Plaintiff about the head and body for the next 3-5 minutes.  Butler was then arrested and charged with aggravated assault, resisting arrest, and eluding arrest.  As a result of this alleged beating, Butler claimed to have suffered several physical injuries, as well as mental and emotional trauma.

In September 1999, Butler initiated this lawsuit against the City of Camden, the Township of Pennsauken, the Township of Cherry Hill, Camden City Police Officer Frett, and several other named and unnamed law enforcement officials.  Among other things, Butler alleged that several of the Defendants used excessive force in effecting his arrest on September 16, 1997.  Butler sought in excess of $100,000 in compensatory and punitive damages for his alleged injuries.  Prior to trial, all Defendants except Officer Frett were dismissed.

On March 4, 2002, a jury trial began in this matter before then-Judge Stephen Orlofsky.  Judge Orlofsky conducted the questioning of the jury pool at voir dire.  After his initial examination, Judge Orlofsky asked counsel at sidebar whether they had any additional questions to be asked of the jury panel.  Plaintiff's counsel requested the court to ask a series of questions relating to the subject of law enforcement bias.  In particular, these questions aimed at determining whether the potential jurors had any bias for or against police officers based on their experiences or beliefs.  Defense counsel did not raise any objection to questioning on the subject of law enforcement bias and actually noted that he did not have any problem with the court asking jurors whether they had "any feelings either adverse or pro toward the police in general."  Nevertheless, the trial judge refused to question the jury about any law enforcement bias because he felt that some of the proposed questions would be better addressed in a jury charge or would be "more prejudicial than helpful" during voir dire.  At the close of trial, the court did not instruct

2

the jury on the subject of law enforcement bias.

After the jury returned a verdict in favor of the Defendant and the court entered judgment for no cause of action in favor of the Defendant, Butler appealed.[1]  On appeal, Butler argued that it was error for the trial judge to deny Plaintiff's request to question the venire panel on the subject of law enforcement bias.  The Third Circuit noted that it had not previously addressed the precise issue raised on Butler's appeal. See Butler v. City of Camden, 352 F.3d 811, 816 (3d Cir. 2003).  Although the Court indicated that district courts have wide latitude to determine the scope of the inquiry at voir dire, the law still required the trial judge to "make those inquiries relevant to the discovery of actual bias, which, in the final analysis, satisfy the essential demands of fairness." Id. at 819.  Because Judge Orlofsky did not make the relevant inquiries regarding potential law enforcement bias, the Court vacated the judgment and remanded for a new trial.

On remand, the matter was reassigned to this Court.  On September 26, 2005, the Court selected a jury and began the second jury trial in this case.  On October 3, 2005, the jury returned a verdict which found that (1) Plaintiff had not proven by a preponderance of the evidence that Officer Frett used excessive force against Plaintiff; (2) Plaintiff had proven by a preponderance of the evidence that Officer Frett failed to intervene and stop the excessive use of force by other officers; (3) Plaintiff had proven by a preponderance of the evidence that Officer Frett's conduct proximately caused Plaintiff's injuries; and (4) Plaintiff was entitled to $1.00 in nominal damages.  This Court then entered judgment for $1.00 in favor of Plaintiff on his failure to intervene claim.

---

[1]Prior to his appeal, Butler made a motion under Federal Rule of Civil Procedure 59 for a new trial, which was dismissed by Judge Orlofsky on June 5, 2002.

Shortly thereafter, the parties filed the present motions regarding an award of attorney's fees and costs.  Prior to any request by the Plaintiff for attorney's fees, the Defendant filed a motion on October 25, 2005 to preclude Plaintiff from recovering any fees and costs.  In response, on November 2, 2005, the Plaintiff filed a motion requesting $113,425.00 in attorney's fees plus $9,211.23 in costs.  Both parties then filed oppositions, but neither party filed a reply.

## II.  DISCUSSION

In his motion to bar Plaintiff from receiving an award of attorney's fees, Officer Frett makes several alternative arguments.  His primary argument is that Plaintiff is not entitled to any attorney's fees under <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992).  Specifically, the Defendant argues that, in light of Butler's limited degree of success on the merits, the only reasonable fee award is no fee at all.  In other words, Defendant contends that Butler should not be unjustly enriched for a technical or de minimis victory.  Additionally, Officer Frett cites the untimeliness of Plaintiff's motion for fees as another factor militating against a fee award.

In the event the Court does decide to award some amount of attorney's fees to Plaintiff, the Defendant argues that any award of fees should only compensate Plaintiff's counsel for time spent on his successful claim for failure to intervene during the second trial.  In the Defendant's view, Butler asserted two distinct claims at the second trial: (1) that Officer Frett used excessive force against the Plaintiff, and (2) that Officer Frett failed to intervene and stop the use of excessive force against the Plaintiff by other officers.  Because the jury found that Plaintiff failed to prove that Officer Frett used excessive force, the Defendant argues that Plaintiff's counsel should not be compensated for any time spent preparing or pursuing that unsuccessful claim.  Similarly, because Plaintiff was wholly unsuccessful on all claims in his first trial, the defense

argues that Plaintiff's counsel should not be compensated for time spent on the first trial.  In addition, Defendant asserts that Plaintiff should not be compensated for fees incurred in pursuing his appeal.  Although Plaintiff obtained a new trial on appeal, the error found on appeal was purely the district court's error relating to a voir dire issue upon which counsel for both sides had agreed.  Because the actions of defense counsel were not in any way responsible for the Plaintiff's appeal, the Defendant contends that the defense should not now be made to pay for the district court's error.

In contrast, the Plaintiff argues that he is entitled to attorney's fees in the amount of $113,425.00 and costs totaling $9,211.23.  First, Plaintiff notes that, under Farrar, he is a prevailing party for purposes of section 1988.  Second, Plaintiff contends that as a prevailing party he is entitled to a fee award equal to the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  According to Plaintiff, the affidavits submitted in support of his motion for fees demonstrate the reasonableness of the requested hourly rate and the number of hours expended.  Third, Plaintiff's counsel claims that he is entitled to all of his fees, including those spent on pursuing Plaintiff's unsuccessful claims, because all of the Plaintiff's claims were based on a common core of facts regarding a single incident.  Fourth, Plaintiff's counsel argues that an award of fees is particularly applicable in this case because Plaintiff's appeal made new law in the Third Circuit regarding the "right of civil rights litigants in police misconduct cases to voir dire the jury on any bias regarding police officers." (Pl. Mem. at 11.)   In other words, Plaintiff's counsel contends that his work in this case allegedly has had "a far reaching effect on the rights of all civil rights litigants in this circuit." (Pl. Mem. at 12.) Finally, Plaintiff's counsel argues that the present case is distinguishable from Farrar because

5

here "the award of nominal damages was not supported by the record, and indeed, contrary to the well established law." (Pl. Mem. at 13.)  That is, counsel contends that unlike the plaintiff in Farrar, the jury found that Butler did prove all of the elements of his claim, but still only awarded him nominal damages.  The Court will consider the parties' arguments in turn.

### A.  Timeliness of Plaintiff's Motion for Attorney's Fees

As a preliminary matter, the Defendant argues in his opposition brief that Plaintiff's motion for attorney's fees was untimely filed under Federal Rule of Civil Procedure 54(d)(2)(B).  Rule 54(d)(2)(B) provides that "unless otherwise provided by statute or order of the court" a *motion* for attorney's fees "must be filed no later than 14 days after entry of judgment."  In turn, Local Rule 54.2 provides that an attorney seeking an award of attorney's fees must submit an *affidavit* in support of its fee request "within 30 days of the entry of judgment or order, unless extended by the Court."  The language of the two rules suggests that they are not mutually exclusive because one pertains to the filing deadline for a motion for attorney's fees and the other pertains to the filing deadline for an affidavit in support of a motion for attorney's fees. See Sokokoff v. Gen. Nutrition Companies, Inc., No. Civ. A. 00-641, 2001 WL 536072, at *4 (D.N.J. May 21, 2001) ("Local Rule 54.2 does not extend the fourteen day time period for filing a motion for attorney's fees, but instead requires that a detailed supplemental affidavit be filed within thirty days of the entry of judgment in support of fees motions in the District of New Jersey."). Nevertheless, the Third Circuit has not drawn that distinction. See Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 261 (3d Cir. 2002).  In Planned Parenthood, the Third Circuit held that Local Rule 54.2 was an "order of the court" that

extended the 14 day limit contained in Rule 54(b)(2)(B) to 30 days. Id. ("we are satisfied that the plaintiffs had 30 days to file their application for attorneys' fees").  In light of this Third Circuit precedent, Butler's motion for attorney's fees is not untimely because both the motion and the supporting affidavits were filed within 30 days from the entry of judgment in this case.  Because the motion was not untimely filed under this standard, the Court must consider the merits of Plaintiff's request.

### B.  Entitlement to Fees and Costs

Title 42 U.S.C. § 1988(b) provides courts with discretion to grant a "reasonable attorney's fee" to a "prevailing party" in a § 1983 action.  A plaintiff is considered "prevailing" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992); see Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989) ("the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties"); Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (noting that for § 1988 purposes a judgment must "affect the behavior of the defendant toward the plaintiff"); Hewitt v. Helms, 482 U.S. 755, 761 (1987) (finding that a plaintiff prevails only when he proves "the settling of some dispute which affects the behavior of the defendant towards the plaintiff").

In nominal damages cases like these, once a party is determined to be prevailing for § 1988 purposes, the Court must then determine whether that party's victory is so de minimis that the only reasonable fee award is no fee award at all.  See Farrar, 506 U.S. at 114-15 ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no fees at

7

all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is

often such a prevailing party."); <u>Buss v. Quigg</u>, No. Civ. A. 01-3908, 2002 WL 31262060, *3

(E.D. Pa. Oct. 9, 2002), <u>aff'd</u> 91 Fed. Appx. 759 (analyzing prevailing party status before

determining how the plaintiff's receipt of nominal damages affects the propriety of awarding

attorney's fees).  The Court will, therefore, determine whether Plaintiff is a prevailing party and

then turn to the Defendant's argument that the allegedly de minimis nature of Plaintiff's victory

should preclude any award of fees.

### 1.  Is Plaintiff a prevailing party?

Neither party disputes that Plaintiff is, in fact, a prevailing party under § 1988.  In <u>Farrar</u>,

the Supreme Court held that "a plaintiff who wins nominal damages is a prevailing party under §

1988."  506 U.S. at 112.  The Court reasoned that nominal damages legally alter the material

relationship between the parties because they force the defendant to pay the plaintiff one dollar,

which the defendant would not otherwise be obligated to do. <u>Id.</u> at 113.  Here, Butler received

nominal damages on his claim for Defendant's failure to intervene and stop the excessive use of

force by other officers.  Consequently, Plaintiff is a prevailing party for §1988 purposes.

### 2.  Is the award of nominal damages a technical or de minimis victory?

In general, a prevailing plaintiff should ordinarily be awarded attorney's fees unless

special circumstances would make an award unjust.  <u>Hensley v. Eckerhardt</u>, 461 U.S. 424, 429

(1983).  The reasoning behind this rule is expressed in the legislative history of § 1988 which

demonstrates that, by enacting the statute, Congress intended to lessen the disparity in legal

representation and resources between opposing parties in civil rights litigation, particularly where

the defendant is a public official with significant resources "available to [him] through funds in

the common treasury, including taxes paid by the plaintiffs themselves." H.R. Rep. No. 94-1558, 94th Cong., 2d Sess. 7 (1976).  In this regard, the potential liability for attorney's fees not only compensates plaintiff's attorneys, but also provides an additional assurance that state actors will not deliberately disregard constitutional rights. See Casey v. Piphus, 435 U.S. 247, 257 n. 11 (1978).

However, in Farrar, the Supreme Court recognized that there may be "some circumstances" where a prevailing party's victory for purposes of §1988 is so "technical" or "de minimis" that the plaintiff should not recover any attorney's fees. Farrar, 506 U.S. at 115.  The Court reasoned that a damages award in a § 1983 action "must always be designed to compensate injuries caused by the constitutional deprivation." Id. (citations omitted).  Therefore, "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary damages, the only reasonable fee is usually no fee at all." Id. Nevertheless, the Court clearly recognized that not all nominal damages cases constituted de minimis victories. See id. at 121 ("That is not to say that all nominal damages awards are de minimis.  Nominal relief does not necessarily a nominal victory make.") (O'Connor J. concurring).

To determine whether a nominal damages award constitutes a de minimis victory, the critical inquiry is the "degree of success" obtained by the prevailing plaintiff. Id. at 113 (quoting Hensley, 461 U.S. at 434).  Justice O'Connor's concurring opinion provides three factors relevant to measuring the extent of the plaintiff's success, including (1) the extent of relief, (2) the significance of the legal issue on which the plaintiff prevailed, and (3) the public purpose

served by the litigation.[2] <u>Farrar</u>, 461 U.S. at 122.

 i. Extent of Relief

 The extent of relief factor weighs the judgment recovered against the judgment sought by the prevailing party.  In the present matter, the Defendant sought in excess of $100,000 in compensatory and punitive damages and only received $1 in nominal damages.  By any measure, this is not a monetary jackpot.  However, when compared with <u>Farrar</u> and some other cases where this factor weighed heavily against awarding fees, the disparity between the judgment recovered and the judgment sought by Butler appears less stark.  For example, in <u>Farrar</u>, the Plaintiff sought $17 million in damages and only received $1.  Although the district court had altogether failed to consider the extent of relief factor, Justice O'Connor noted that it was "hard to envision a more dramatic difference." <u>Ferrar</u>, 506 U.S. at 121.  Likewise, in <u>Romberg v. Nichols</u>, 48 F.3d 453 (9th Cir. 1995), the prevailing party sought $2 million, but only received the nominal amount of $1. There, the Ninth Circuit indicated that, "as in <u>Farrar</u>, the plaintiff requested a substantial sum, but received only a dollar." 48 F.3d at 455.  By contrast, in <u>Jones v. Lockhart</u>, 29 F.3d 422 (8th Cir. 1994), the prevailing plaintiff requested $860,000 in damages and only received $2.  Despite the small recovery, the Eighth Circuit upheld the lower court's finding that this discrepancy between the amount requested and the amount recovered "pales in comparison to the discrepancy presented in <u>Farrar</u>." 29 F.3d at 424.  Similarly, in <u>Buss</u>, the

---

 [2] Several Circuit Courts have applied the O'Connor factors to determine whether a nominal damages award constituted a de minimis victory.  <u>See e.g.</u>, <u>Brandau v. Kansas</u>, 168 F.3d 1179 (10th Cir. 1999); <u>Johnson v. Lafayette Fire Fighters Ass'n Local 472</u>, 51 F.3d 726 (7th Cir. 1995); <u>Cabrera v. Jakabowitz</u>, 24 F.3d 372 (2d Cir. 1994); <u>Jones v. Lockhart</u>, 29 F.3d 422 (8th Cir. 1994). In the Third Circuit, at least one district court applying these factors has been affirmed on appeal.  <u>See</u> <u>Buss v. Quigg</u>, 2002 WL 31262060 (E.D. Pa. Oct. 9, 2002), <u>aff'd</u> 91 Fed. Appx. 759 (3d Cir. 2004).

plaintiff sought an aggregate award of $150,000 and only received nominal damages; however, the court found that "the discrepancy between $150,000 and $3 does not rise to the level that concerned the court in Farrar." Buss, 2002 WL 31262060, at *7.  As a result, the Buss court, like the Jones court, indicated that the first factor weighed in favor of an award of reasonable fees. Id.

In terms of the extent of relief factor, the present case is more akin to Buss and Jones than Farrar and Romberg.  The fact that Butler sought a relatively small amount in damages suggests that the relief he sought through this litigation was not monetary relief on the same scale as the plaintiffs in Ferrar and Romberg, and thus, the discrepancy between the judgment Butler sought and the judgment he recovered is substantially less than the discrepancy at issue in those cases. Accordingly, the Court finds that the extent of relief factor weighs, at least slightly, in favor of awarding some measure of attorney's fees.

### ii.  Significance of Legal Issue

The second factor examines the significance of the legal issue on which the plaintiff prevailed.  In this case, although Butler did not establish that Officer Frett used excessive force against him, he did establish Officer Frett failed to prevent other, unknown officers from using excessive force.  In other words, although Officer Frett did not use excessive force, the jury concluded that other officers had.  In contrast to the injury to a business interest alleged in Farrar, Butler's excessive force claim as to unknown officers has the level of significance required to tip this factor in favor of awarding reasonable fees. See Jones, 29 F.3d at 424 ("we find that vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in Farrar").  In Lucas v. Guyton, 901 F. Supp. 1047 (D.S.C. 1995), the court recognized that "the constitutional right to

11

be free from cruel and unusual punishment . . . is one of the premises upon which this great nation was founded and that right continues to distinguish this nation today. 901 F. Supp. at 1055.  Citing Jones, the court in Lyons found that plaintiff's excessive force claim was significant. Id.

Similarly, because Butler prevailed in showing that some officers used excessive force, he succeeded on a legal issue of substantial significance.  The Court notes that this significance is somewhat tempered by the fact that Butler could not identify the officers who used excessive force against him.  As a result, he did not bring claims against those other individuals, and he only prevailed against the named Defendant for failure to intervene.  Nonetheless, underlying that finding of bystander liability is a finding that other officers did, in fact, use excessive force in violation of Plaintiff's constitutional rights.  Accordingly, the issue on which Plaintiff prevailed still entails a finding of some excessive force, which is a substantial legal issue weighing in favor of awarding reasonable attorney's fees.

### iii.  Public Purpose Served

The third factor relates to whether the prevailing party's victory serves any public purpose.  Although the verdict in Plaintiff's case will not cause a formal change in police policy or training, it does have some recognized public value to the extent that it furthers the "private attorney general" function of civil right suits encouraged by § 1988.  See Buss, 2002 WL 31262060, at *8 (citing Farrar, 506 U.S. at 120); see also Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402 (1968) (recognizing that statutes permitting awards of attorneys' fees for prevailing civil rights litigants serve a "private attorney general" function by encouraging injured individuals to pursue valid claims).  In Farrar, Justice O'Connor explained that the Court was

12

unable to discern how the judgment or a fee award in that case would deter future lawless conduct because the district court did not provide sufficient information on that point.  That is, it was unclear how a verdict regarding an intrusion on Plaintiff's business interest could serve a broader, public deterrence value.  However, in this case, the jury verdict has a more straightforward message with a clearer deterrence value to police – namely, they must act to prevent the excessive use of force when they see it.  Cf. Buss, 2003 WL 31262060, at *8 (court found public purpose in jury verdict that awarded nominal damages to plaintiff for unlawful entry claim because "it carries a plain meaning: [police] must knock, announce and wait for a response before entering").  Therefore, although plaintiff's victory did not entail any broadly applicable injunctive relief or effect a direct change in policy, it did have some recognized value to the public in serving the deterrence function of § 1983.[3]

Overall, although this may be a close case, the three relevant factors indicate that Plaintiff's success is not the kind of  technical or de minimis victory that would preclude an award of attorney's fees.  As a result, the Court will turn to an analysis of reasonable fees and costs.

**B. Determining Reasonable Fees**

A reasonable attorney's fee is one that is "adequate to attract competent counsel" but does

---

[3] Plaintiff's counsel also argues that the Plaintiff's victory on appeal served a substantial public purpose because it had "a far reaching effect on the rights of all civil rights litigants in this circuit." (Pl. Mem. at 12.)  The Court does not find this argument to be particularly persuasive because courts have been in the practice of asking the jury pool about law enforcement bias for years. See Brown v. United States, 338 F.2d 543 (D.C. Cir. 1964); United States v. Gelb, 881 F.2d 1155 (2d Cir. 1989); United States v. Espinosa, 771 F.2d 1382 (10th Cir. 1985); United States v. Spaar, 748 F.2d 1249 (8th Cir. 1984);  United States v. Baldwin, 607 F.2d 1295 (9th Cir. 1979).

not "produce windfalls." <u>Blum v. Stenson</u>, 465 U.S. 886, 897 (1984).  Courts use the "lodestar"

formula to determine whether a claimed fee is reasonable. <u>See</u> <u>id.</u> at 888; <u>Maldonado v. Houston</u>,

256 F.3d 181, 184 (3d Cir. 2001). The "lodestar" is calculated by multiplying the number of

hours reasonably expended on the litigation by a reasonable hourly rate. <u>Blum</u>, 465 U.S. at 888.

The party requesting the fees bears the burden of proving the reasonableness of the

request. <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  To satisfy this burden, the

party seeking fees must "submit evidence supporting the hours worked and rates charged."

<u>Hensley</u>, 461 U.S. at 433.  Then, the opposing party must make specific objections that are

sufficient to provide the fee applicant with notice of the contested portions of the claimed fee.

<u>Rode</u>, 892 F.2d at 1183.  Once the objections are sufficiently made, the district court has

considerable discretion to adjust the fee as long as the adjustments are based on the challenger's

objections. <u>Bell v. United Princeton Props.</u>, 884 F.2d 715, 721 (3d Cir. 1989).

### 1. *Hourly Rate*

A reasonable hourly rate is generally reflected in the "prevailing market rates in the

relevant community." <u>Maldonado</u>, 256 F.3d at 184 (citing <u>Blum</u>, 465 U.S. at 895)).  Specifically,

the fee applicant bears the burden of producing sufficient evidence that the requested rates

correspond with the prevailing rates in the community for similar services by lawyers of

reasonably comparable skill, experience and reputation. <u>Blum</u>, 465 U.S. at 895 n. 11.  Plaintiff's

Counsel, Alan Denenberg, states that he has 18 years of experience as a practicing attorney and

concentrates his practice on civil rights litigation with a particular focus on police misconduct.

(Denenberg Aff. ¶¶ 3, 6.)  He represents that his hourly rate of $325 is "well within the range of

fees charged by attorneys of comparable experience within this geographical region." (Denenberg

14

Aff. ¶ 15.)  In support of his claimed rate, Mr. Denenberg submits affidavits from Armando A.

Pandolo, Jr., Allan L. Yatvin, and Mark B. Frost.  All three of these attorneys confirm that they

have significant experience litigating civil rights suits in this area, and all three aver that Mr.

Denenberg's claimed hourly rate of $325 is well within the prevailing range of fees charged

within the relevant legal community. (See Pandolo Aff. ¶¶ 1, 4, 20; Yatvin Aff. ¶¶ 1, 3, 22; Frost

Aff. ¶¶ 3, 5, 15.)  Moreover, Defendant does not object to the claimed hourly rate, nor is there

any evidence before the Court to suggest that the claimed rate is unreasonable in light of

prevailing market rates in the relevant community.  Therefore, the Court finds that Mr.

Denenberg's claimed hourly rate of $325 is reasonable.

### 2.  Hours Expended

The Defendant's main challenges to Plaintiff's fee petition relate to the number of hours

claimed in the fee request.  The number of hours used to calculate the lodestar must reflect the

amount of time "reasonably expended on the litigation." Hensley, 461 U.S. at 433.  Excessive,

redundant, or unnecessary hours are not reasonably expended and should be excluded from the

calculation. Id. at 434.  In addition, attorneys should not recover fees for work that is

insufficiently documented, nor should attorneys recover fees for non-legal work that could have

easily been delegated to a non-attorney or less experienced associate. Ursic v. Bethlehem Mines,

719 F.2d 670, 677 (1983).  In the present matter, Mr. Denenberg claims a total of 349 hours for

legal work performed over the course of this litigation.  Defendant presents several challenges to

the number of hours expended.

### i.  Hours Related to First Trial and Appeal

Defendant argues that Plaintiff should not be compensated for those hours that relate to

the first trial and the appeal.  Because the Plaintiff did not prevail in the first trial, the Defendant

argues that he is not entitled to fees relating to work performed on that trial.  Similarly, because

the appeal was necessitated by the district court's error rather than any error of counsel,

Defendant argues that he should not be made to pay for the court's error.  The Defendant does

not cite any authority to support these arguments. (See Def. Opp. at 6-7.)

        In contrast, the weight of authority appears to contradict Defendant's arguments regarding

Plaintiff's ability to recover fees relating to the first trial and the appeal.  For instance, in the

context of a motion for fees under § 1988, the Fourth Circuit has specifically rejected the

argument that "fees and expenses attributable to the first trial, which ended in mistrial, should be

excluded on the ground that the plaintiffs did not prevail in that proceeding."  Buffington v.

Baltimore County, Md., 913 F.2d 113, 128 n.12 (4th Cir. 1990).  In Buffington, the Court

recognized that "Section 1988 rewards a plaintiff who ultimately prevails-who wins the war-

without deducting for lost battles along the way. Id. (citing Spell v. McDaniel I, 824 F.2d 1380

(4th Cir.1987) (approving lodestar that included hours spent on the first trial, even though second

trial on damages was granted)).  Other courts have applied similar reasoning in awarding fees for

all stages of litigation, including unsuccessful stages, where the plaintiff ultimately prevailed on

the merits. See e.g., Schneider v. Colegio de Abogados de Puerto Rico, 187 F.3d 30, 48-49 (1st

Cir. 1999) (upholding district court's refusal to discount hours spent in unsuccessfully defending

appeals where plaintiff ultimately achieved success on a portion of the relief sought ); Cabrales v.

County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991) ( "a plaintiff who is unsuccessful at

a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees

even for the unsuccessful stage"); Alizadeh v. Safeway Stores, Inc., 910 F.2d 234, 237-38 (5th

Cir. 1990) (awarding fees for work on appeal that resulted in reversal of summary judgment in favor of party who went on to prevail at trial, and noting that ultimate success on merits made award of "fees for the entire course of the litigation" reasonable exercise of district court's discretion); Bates v. Board of Educ. of Capital Sch. Dist., No. Civ. A. 97-394, 2000 WL 1292677, *3 (D. Del. Aug. 29, 2000) (rejecting the defendant's argument that the court should exclude hours from the lodestar that were spent on unsuccessful first trial); Ballen v. Martin Chevrolet-Buick of Delaware, No. Civ. A. 94-484, 1998 WL 1013874, *2 (D. Del. Sept. 17, 1998) (refusing to deduct hours spent on first trial that ended in a hung jury and had to be retried); Dougherty v. Barry, 820 F. Supp. 20, 25 (D.D.C.1993) (rejecting attempt to bifurcate failure on appeal from success at trial; reasonable fees would be "determined by examination of the entire case").  In accordance with the above-cited cases, the Court will not exclude the hours spent by Mr. Denenberg on the first trial and appeal.

ii.  Excessive, Unnecessary, and Delegable Hours

In the alternative, Defendant argues that should the Court award fees for the first trial and the appeal, the Defendant objects to several of the specific time entries as being (1) unrelated to the successful claim, (2) easily delegable to non-professional staff or less experienced attorneys, and/or (3) excessive, unnecessary, or duplicative. The Defendant's objection regarding time spent on the unsuccessful claim will be addressed in the next section of the analysis; however, the Court will first address Defendant's objections relating to work that is allegedly delegable, excessive, unnecessary, or duplicative.

First, Defendant cites to many of Mr. Denenberg's time entries as being excessive.  In particular, the Defendant objects to the following hours as being excessive:

- 5.3 hours to draft a Complaint
- 1.5 hours for scheduling conference
- 14.6 hours for researching and writing a brief in opposition to summary judgment;
- 2.0 hours for drafting a letter to Terrance L. Lavy regarding interrogatories
- 3.5 hours for settlement conferences over 2 days
- 1.8 hours for preparing voir dire
- 5.8 hours to research and draft a motion in limine
- 5.2 hours to prepare witness and exhibit lists
- 5.8 hours to prepare direct examination of three witnesses
- 5.8 hours to prepare for fourth day of trial including work on cross and preparation of motion in limine
- 10.5 hours of legal research on appeal brief
- 3.5 hours for reviewing and summarizing trial transcript of testimony of two witnesses
- 5.0 hours for researching and drafting a motion in limine on a new issue
- 2.5 hours for researching attorney's fee issue
- 23.9 hours for preparing fee petition including drafting and reviewing affidavits and legal memorandum

(See Def. Opp. at 12-15; Exhibit B to Pl. Mem.)  However, other than to label these hours as

"excessive," the Defendant does not present any argument or explanation to suggest that these

hours were not reasonably expended.  By contrast, Mr. Denenberg has submitted a sworn

affidavit attesting to the fact that the hours listed in his entries were "necessarily expended in the

courts of this litigation." (Denenberg Aff. ¶ 20.)  Moreover, in the Court's own estimation, the

hours labeled as excessive by Defendant actually demonstrate that he worked efficiently.  For

instance, counsel seeks 14.6 hours for researching and writing a brief in opposition to a motion

for summary judgment.  Given that summary judgment briefs require extensive compilation and

analysis of material facts, evidence, and relevant law, billing less than fifteen hours in total for

those tasks is not clearly unreasonable.  Likewise, it never took counsel much more than half a

day to research and draft motions in limine, the complaint, or various pre-trial materials.

Accordingly, the Court finds that the claimed hours listed above were reasonably expended, and

18

therefore, do not warrant a reduction for excessiveness.

Second, the Defendant argues that some of the hours expended relate to time spent performing non-legal or clerical work. Specifically, the Defendant identifies the following entries as non-legal, delegable work:

- .5 hours for copying exhibits and serving opposition brief
- .1 hours for faxing a pre-trial memorandum
- .3 hours to file and serve Amended Complaint
- .3 hours for filing and serving pre-trial documents
- 3.5 hours for preparing subpoenas
- .8 hours for internet search to find witness' address

(See Def. Opp. at 12-15; Exhibit B to Pl. Mem.) Because these tasks are easily delegable to non-professional staff, the Court will reduce the number of reasonably expended hours by 5.5 hours. See Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (finding that it is not appropriate to allow "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals"); Sheffer v. Experian Information Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003) ("Since the costs of clerical work, such as filing and copying, are ordinarily considered to be part of an attorney's rate as office overhead, they will not be compensated.").

Third, Defendant objects to three of Plaintiff's time entries on grounds that they seek payment for Mr. Denenberg's oversights or errors. On October 1, 1998, Plaintiff's counsel claims he spent .1 hours writing a letter to Judge Mariano enclosing a Memorandum of Law on Plaintiff's late tort notice claim. Clearly, this work was only necessary because Plaintiff did not file a timely notice in the first instance. On February 26, 1999, Mr. Denenberg claims to have spent .2 hours drafting a letter to the Plaintiff enclosing a copy of the Complaint, but the same time sheet indicates that counsel did not draft the Complaint until September 13, 1999.

19

Undoubtedly, these contradictory entries reflect some kind of oversight.  On May 3, 2002, counsel spent .1 hours forwarding Ralph Kramer, Esq. a letter that was formerly sent to the Judge but apparently was not copied to Mr. Kramer.  Moreover, on July 31, 2005 counsel claims .5 hours for "Research by Barry on location of witness."  Obviously, research by Barry is not research conducted by Mr. Denenberg.  Simply put, all of these entries relate to hours that were either (1) listed incorrectly, or (2) necessary only because of counsel's error or oversight.  The Plaintiff should not be compensated for those errors.  Therefore, the Court will deduct 0.9 hours from the number of hours reasonably expended.

Finally, the Defendant argues that two additional time entries are non-compesable as unnecessary or duplicative.  In his petition, Mr. Denenberg requests fees for the .1 hours he spent drafting a letter to his client requesting payment so that he could obtain trial transcripts.  The Court agrees with the Defendant that Officer Frett should not be responsible to pay for Plaintiff's failure to provide funds to his own attorney for his appeal.  Therefore, the Court will deduct an additional .1 hours from the total number of hours expended.  However, the Court does not consider counsel's time spent drafting a letter to Plaintiff confirming discussions about post-trial motions to be duplicative.  Mr. Denenberg did not bill for the time spent consulting with his client about the post-trial motions, so claiming time for the follow up letter is not duplicative.

In accordance with the foregoing analysis on excessive, unnecessary, or delegable hours, the Court will reduce the number of hours reasonably expended by 6.5 hours.  Consequently, the total number of hours reasonably expended in this matter is 342.5 hours. Multiplying 342.5 hours by the hourly rate of $325 produces a lodestar value of $111,312.50.

*3. Adjustments*

In addition to the foregoing objections, Defendant contends that Plaintiff's counsel should only be compensated for those hours that relate to Plaintiff's successful claim.  In other words, Defendant argues that Plaintiff's excessive force claim against Defendant Frett is completely distinct from Plaintiff's claim against Defendant Frett for failure to intervene.  Therefore, Defendant requests that the court award fees only as to time spent on the successful failure to intervene claim as opposed to the unsuccessful excessive force claim against Officer Frett.

Where the Plaintiff is only partially successful, the district court has discretion to adjust the award of fees for limited success by either (1) excluding the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed," Rode, 892 F.2d at 1183, or (2) "reduc[ing] the award to account for the limited success," by, for example, considering "[t]he amount of damages awarded, when compared with the amount of damages requested." Washington, 89 F.3d 1031,1042 (3d Cir. 1996) (quoting Abrams v. Lightolier, 50 F.3d 1204, 1222 (3d Cir. 1995)); Hensley, 461 U.S. at 436-37.  As noted, in order for the Court to proceed with the first option, the time entries must be "distinct in all respects from claims on which the party did succeed." Rode, 892 F.2d at 1183. Where successful and unsuccessful claims share a common core of facts and related legal theories, it may be impossible to parse out the hours spent litigating the successful claims from the unsuccessful claims. See Hensley, 461 U.S. at 435; see also Abrams, 50 F.3d at 1222.  In this case, Plaintiff's unsuccessful excessive force claim against Officer Frett and his successful failure to intervene both share a common nucleus of fact.  Specifically, both claims rely upon what Officer Frett did or did not do at the time of Butler's arrest, and more generally, both claims arise out of the events surrounding Butler's arrest in February 1997. See Buss, 2002 WL

21

31262060, at *11 (noting that an unlawful entry claim and an excessive force claim shared a common nucleus of fact because both relate to the facts of a single incident).  Therefore, the Court finds that it would be inappropriate to attempt to separate the hours spent litigating Plaintiff's successful from the time spent on the unsuccessful claim.

However, based on Plaintiff's limited success, the Court may still make a downward adjustment to ensure that the Court awards "only that amount of fees that is reasonable in relation to the results obtained."  Hensley, 461 U.S. at 440.  In this regard, any fees awarded need not be reduced to maintain a proportionate ratio between the fee award and the damages awarded so long as the reduction in fees reflects the limited degree of success obtained. See Washington, 89 F.3d at 1042.  That said, there does not appear to be any single approach used to determine how much a fee award should be reduced for lack of success. Compare Washington, 89 F.3d at 1043 (finding that district court's reduction of fees by 50% was not necessarily inappropriate where (1) plaintiff requested more than $750,000 in damages, (2) the jury ruled against the primary claim, and (3) the jury awarded  a nominal victory of $25,000 on other claim), with Hilferty v. Am. Honda Motor Co., Civ. A. No. 95-5324, 1996 WL 287276, at *6-7 (E.D. Pa. May 30, 1996) (reducing fee award by roughly two-thirds where plaintiff recovered only 8% of the damages sought), aff'd, 116 F.3d 468 (3d Cir. 1997), and Buss, 2002 WL 31262060, at *12 (declining to reduce fee award where plaintiffs (1) succeeded on unlawful entry claim, (2) received only $3 in nominal damages, and (3) failed on excessive force claim).  Here, Butler sought $100,000 in damages for his claims against Officer Frett for excessive force and failure to intervene.  He failed on his excessive force claim, prevailed on his failure to intervene claim, and received only $1 in nominal damages.  In other words, Plaintiff was prevailing on half the claims tried.  Also,

22

in considering the downward adjustment, the Court is conscious that the jury's verdict on the failure to intervene claim demonstrates that a constitutional violation occurred, but not by the named Defendant.  In these circumstances, the Court will reduce the lodestar by 50% to reflect Butler's limited degree of success.  As a result, the fee award in this case will be $55,656.25.

### C.  Costs/Expenses

Under § 1988, civil rights litigants who are successful at trial are entitled to reimbursement for the costs associated with litigating their claim where such costs are "incidental and necessary expenses incurred in furnishing effective and competent representation." Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 267 (3d Cir. 2002).  The Court has authority to award "reasonable out-of-pocket expenses . . . normally charged to a fee-paying client, in the course of providing legal services." Id. (quoting Associated Builders & Contractors of La., Inc. v. The Orleans Parish Sch. Bd., 919 F.2d 374, 380 (5th Cir. 1990)).  Here, Plaintiff's counsel seeks an award of litigation costs in the amount of $9,211.32, and the Defendant objects to several of these requested expenses.

First, Defendant argues that Plaintiff is not entitled to an award for expert fees under § 1988.  In support of this contention, Plaintiff cites West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83 (1991).  However, Casey was superceded by the 1991 amendments to § 1988 which allow for recovery of expert witness fees in cases like these. See 42 U.S.C. § 1988(c).

Second, Defendant objects to the claimed costs for witnesses who were not called to testify at trial.  There is some uncertainty as to whether fees relating to nontestifying experts and witnesses may be recovered, but the circumstances in this case do not seem to warrant awarding those costs. Courts have awarded fees for nontestifying witnesses where (1) those individuals are

23

experts that "educate counsel on a technical matter germane to the suit," Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 716-17 (3d Cir. 2005); (2) those individuals were ready to testify but extrinsic circumstances rendered their testimony unnecessary, Paschal v. Flagstar Bank, 297 F.3d 431, 438 (6th Cir. 2002); or (3) those individuals contributed to the attorney's work product, Missouri v. Jenkins ex. rel. Agyei, 491 U.S. 274, 285 (1989). Here, the Plaintiff has not responded to Defendant's objections regarding these fees for uncalled witnesses, nor has he otherwise provided any explanation for their inclusion in the petition for costs. Consequently, in the absence of any explanation as to why these fees should be included, the Court will not award the $185.71 in witness fees relating to individuals who were never called to testify.[4] See Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1553 (5th Cir. 1984) (noting that courts "do not ordinarily allow fees for witnesses who have not testified at trial").

Third, the Defendant argues that several of the listed costs are objectionable because there is no indication that they are "related to this case." These requests include: $275 for "Kitty Hailey Investigation"; $25 for "Federal Express"; $48.15 for "Reliable Copy Service"; $416.22 for "West Group-Appeal Research"; and $80 for "City of Camden." However, the Third Circuit has recognized that "reproduction expenses, telephone expenses of the attorney, travel time and expenses of the attorney, and postage" are generally recoverable under § 1988. Abrams, 50 F.3d at 1225.[5] Therefore, the Court will award the claimed costs for mailings, copying, and travel

---

[4] These fees include the $40 witness fees for "Custodial Records - Prison," "Chief Allenbach," "Camden Emergency Services," and "Sgt. Hermansky" and the $25.71 claimed for "Medical Records Dr. Alberti."

[5] New Jersey has also allowed for reimbursement of travel expenses. See H.I.P. v. Hovnanian, 291 N.J. Super. 144, 676 A.2d 1166, 1176 (1996). Therefore, travel expenses may be awarded in this case because they are costs that are customarily compensable in the relevant

expenses,[6] but will exclude the other costs listed above ($275 for Kitty Hailey Investigation, $416.22 for West Group-Appeal Research, and $80 for City of Camden, together totaling $771.22) as being insufficiently documented.

Altogether, the Court will deduct $956.93 from the requested costs for a total award of expenses equaling $8254.39.

## III.  CONCLUSION

For the foregoing reasons, the Defendant's Motion to Bar Plaintiff from Recovering Attorney's Fees will be denied and Plaintiff's Motion for Attorney's fees will be granted in part and denied in part.  In total, the Court will award Plaintiff $55,656.25 in attorney's fees plus $8254.39 in costs.  The accompanying Order shall issue today.

Dated:    6-29-06                                   s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

community.  See Planned Parenthood, 297 F.3d at 267.

[6] The only objection Defendant raises with respect to Mr. Denenberg's $215 request for travel related expenses is a general, inaccurate claim that those costs are "not recoverable."